The first case, United States v. Stewart. May it please the court, my name is Alexandra Shapiro and I represent appellant Sean Stewart. This was a very close case. The jury deliberated for five days and required an Allen charge to reach a verdict. The key piece of evidence was the hearsay silver platter statement, which the government played to the hilt from the story. It was not given a chance to weigh the independent evidence showing that Sean Stewart never made the silver platter statement. He was deprived of his constitutional rights to present a meaningful defense and a fair trial. He exhausted every possible avenue of introducing the evidence showing he didn't make the statement, but at the government's urging, the district court thwarted every effort and kept that evidence from the jury. What was, in your view, inconsistent between the silver platter statement and Robert Stewart's statements to the FBI? Well, Your Honor, first of all, there were two direct statements that Robert Stewart made to the FBI indicating that Sean Stewart said something different. First, so the agent twice asked him why he made the statement. The first time, in response, he said that what Sean had said was, if you were trading, you could have made, like, millions of dollars. The second time, he said, he just said, I think he might have said, I said I was working on this deal. Gee, if you'd invested, you would have made millions of dollars. He also said that Sean was drunk at the time, which helped explain why he might have made these more benign statements. In addition, and I think most importantly, the district court applied the wrong legal standard. The district court said that it was not allowing this impeachment because Robert had never, quote, specifically denied, using the precise cases. The leading cases... I'm sorry? Yes, I'm sorry, Your Honor. That's not the rule. TRASPA specifically rejects an approach requiring that the statements be diametrically opposed in that manner and says that any variance between the statement and the testimony or the declaration that has a reasonable bearing on credibility satisfies the rule, or alternatively, a similar test, if a person, a jury could reasonably infer that a person who made one statement wouldn't have made the other, that that's sufficient. And as we've cited in many cases in our brief in which this court has found statements that were far less diametrically opposed than the ones here, were admissible under Rule 806. And the whole point of the rule is that, as the rule's text indicates, is that the court is supposed to allow any evidence that would be admissible for those purposes if the declarant had testified as a witness. And I respectfully submit that the relevant post-arrest statements plainly satisfy this low bar. And there's simply no reasonable argument that if Robert had testified that Sean made the silver platter statement, that he couldn't have been cross-examined with these post-arrest statements. And that's the test under the rule's language. There's just simply no basis for it. And it was incredibly unfair, and the government took full advantage of this by emphasizing the statement and saying that Sean had served up tips to his father on a silver platter, expecting him to profit. It ended its opening with similar words. It began, it repeated the emphasis on the statements throughout both the opening and closing and the rebuttal. And in particular, not only said in the rebuttal that the tapes were devastating to the defense and he knew it, but actually chastised the defense for saying that Robert Stewart was lying, and that's at Appendix 567. And the court went on to then criticize the defendant in his testimony because he couldn't come up with an explanation for why his father would have made that statement. And under those circumstances, I think it's extremely clear how unfair this was. Sean Stewart, he tried everything he could to rebut the statement. He tried to put in these post-arrest statements. When that wasn't allowed, he tried to call his father as a witness. The government essentially deterred the father from testifying by making clear to his attorney that if he testified consistent with the post-arrest statements, he would face perjury or possibly other charges. And then the district court allowed him to invoke the Fifth without a detailed inquiry that's required under Fisher and the other authorities we've cited. On the in-camera hearing, this is not a question about the substance, but could you tell me, was the district court represented at that hearing? My understanding is that at the in-camera hearing, the parties were not present. The in-camera hearing was sealed, and then later in the trial, or I believe at the end of the trial, the district court granted an application by the defense to unseal the in-camera hearing and make it available to the defense and to a wall team for the government, and then there was a post-trial motion made based in part on what happened at the in-camera hearing. When was it that you first gained access to the transcript? I believe it was after the trial. I don't have the specific date, but I can submit that in a letter. We were not present. I didn't represent the defendant at trial, but the defense counsel was not present at that in-camera hearing. It was just the defense counsel for Mr. Stewart, the court, and I believe Robert Stewart. I'll reserve the remainder of my time for rebuttal unless the Court has other . . . I guess I do want to address one other thing, which is that we do think that the silver platter statement was inadmissible to begin with, and that the district court's stated basis for admitting it under Rule 804 was inconsistent with the proper legal standard under Williamson and this Court's cases interpreting it, but I think the even more egregious error was once having let it in, refusing to allow the impeachment under Rule 806. Let me just . . . I want to make sure I understand your argument. The agent says, so why did he get mad at you? Why did he get mad at you and say, quote, I served this up to you on a silver platter and you didn't invest in it? Robert, I think that day he was clearly drinking. Agent, do you remember that day specifically? Stewart, I remember you know, during that period, because he was getting divorced, he is, you know, and he just said . . . I think he might have said, you know, you know, I said I was working on this deal. Gee, if you had invested in it, you would have made millions of dollars. Is that correct? Yes, Your Honor. How does that impeach or contradict the . . . I mean, it didn't . . . How does that seem to impeach the proposition that he said, at least in substance, if not exactly the same words, what the original testimony showed? Well, I'd say two things. Number one, I think it's actually quite different because there's a very substantive difference, and I think this is clearly why the government fought so hard to keep these statements out. There's a substantive difference between saying, I served you tips up on a silver platter and saying, oh, gee, by the way, if you'd invested, you would have made millions of dollars, and also making clear that Sean was drunk at the time provides context that suggests it was an offhand remark without the same meaning, and particularly in the context of the many other statements that Robert Stewart made during this interview indicating that his son had no idea he was investing, that the son was really just bragging or proud of the deals he was working on and so forth. But I also think that the way one would impeach the witness at trial would be to say, well, isn't it a fact . . . Now, you testified that Sean said he served tips on a silver platter. Well, isn't it a fact that he was drunk at the time, and isn't it a fact that what he really said was an offhand remark that you might have made money if you had invested, and so on and so forth. So I think there's no . . . Clearly, that has a reasonable bearing on credibility, and these are inferences for the jury to draw. The jury should have been given this information. The government might have, you know, stood up and said, well, it's not inconsistent or it really amounts to the same thing, and the defense could explain why that's not the case. But the whole . . . This should have been up to the jury once the silver platter statement was admitted. It was unfair to Sean Stewart to deprive him of any ability to demonstrate that this statement was never made. So your point, as I understand it, is that there is a distinction between Sean having told Robert, I can't believe you didn't trade, and you would have made money if you had traded. Well, yes, but also I think the term silver platter is the loaded phrase that the government repeatedly used as a blunt weapon in its arguments. It called this devastating. It used the phrase silver platter, talked about how the ordinary investors don't get tips served up on a silver platter. It's a loaded phrase that's quite different than someone who's drunk saying, oh, gee, you know, you might have made money if you had invested on the things I told you about my work. I mean, I think those are quite different, and by depriving the jury of the ability to assess whether those differences mattered and to what extent and how much, the court deprived Sean Stewart of a fair trial. I mean, this is not a defendant who was engaged in tactical maneuvers. He took the stand. That's very unusual. He denied the statement. He denied deliberately tipping his father. He tried every way he could, including trying to call his father as a witness to rebut this, and at every turn the court prevented him from presenting any independent evidence that rebutted this statement, which was the only direct evidence of guilt that the government had. And keep in mind, again, that this is a jury that deliberated for five days after a mere eight days of trial testimony and substantive addresses and so forth. So it was a very short trial, and yet the jury deliberated for five days and required an Allen charge. It was clearly an extremely close case, and providing some evidence to rebut this could have made all the difference in the world. Did counsel argue Rule 806 to the trial? Absolutely, Your Honor. It was briefed and argued below, and, indeed, even after the district court allowed Robert Stewart to invoke the Fifth, and it became apparent there would be no way to call him, defense counsel renewed their motion under 806, and the district court denied it again. Thank you. Good morning. May it please the Court. My name is Brooke Cuccinella, and I represent the government on this appeal, and I also represented the government down below at trial. I'd like to start with a couple of points. Ms. Shapiro suggests that, had the post-arrest statements been allowed in, that the jury would have been able to consider the fact that the silver platter statement was never made. That is not what the post-arrest statements suggest. As Your Honors have pointed out, this— Well, it depends what you mean by the silver platter statement. I mean, the argument that was just being made in response to my question was that maybe a large part of the statement was made, but that it didn't include the words silver platter, which have an implication, about the opportunity that I handed you that you didn't take. And that's certainly Ms. Shapiro's argument. However, Your Honor, when Robert Stewart was confronted with the silver platter statement by the FBI during his post-arrest questioning, he was quoted that statement. Why did he get mad at you and say, I served this up to you on a silver platter, and you didn't invest in it? Why did he get mad at you and say that? Robert Stewart at no point says, I didn't say that. Instead, he tries to offer a gloss or an explanation, trying to give it an innocent— Why did you oppose? You're saying to us, this had no impeachment value, so why did you oppose it? Because it wouldn't have been properly introduced, because it wasn't an express contradiction. And that is what this circuit has said. Are you saying that if Robert Stewart had been on the stand and had testified about the silver platter, had testified consistently with the silver platter statement, that he wouldn't have been allowed to be cross-examined in this fashion? Well, Your Honor, those weren't the facts that were presented here. And while that's what the rule requires, that is not what Judge Swain was considering. The government still would have objected, and the judge— Why? Because we would have argued that it wasn't proper for impeachment because it wasn't inconsistent. You would have objected to the cross-examination of the father? For a prior inconsistent statement? Yes. It wouldn't be a prior inconsistent statement. So they may have been able to bring it in in another way, but with respect to— It wouldn't be inconsistent to the extent that the other version of it didn't include the words silver platter? Well, Your Honor, I take issue with the fact that there's a suggestion that Robert Stewart gave another version of it. What he did is he was trying to explain what he meant when he was being confronted by the FBI. That's certainly a fair argument. And I think that that is what Judge Swain was looking at when she wrote a written opinion finding that there was no inconsistency here. She looked at this Court's precedent. She looked at TRASCA. She specifically cited it in her written opinion. And then she went to Ebers, and she said, based on the Second Circuit, the law in the Second Circuit, this isn't a statement that's appropriate here because it does not directly contradict, it's not an express contradiction of the hearsay statement that was admitted. So Judge Swain properly did that analysis. It was deliberative. It was thoughtful. She should have written opinion. So yes, Your Honor, I believe that even if he had taken the stand, the government would have objected, and it's very likely that the outcome would have been the same. Nonetheless, I do think it is worth mentioning here that this ultimately, even if Judge Swain got it wrong, which the government submits she did not, she did a proper, deliberative... Let's imagine a slightly different scenario in which the father is on the stand, and he says, he's on the stand called by the government, and he says, my son said to me, I can't believe you didn't do this. I served it up to you on a silver platter, and you didn't invest on it, in it. On cross-examination, defense counsel says to him, I'm going to read to you a question and answer that you gave previously, and the question and answer is by an agent. What did he say to you at that time? And he said, I was working on this deal. Gee, if you had invested in it, you would have made millions of dollars. The question is, is counsel allowed to ask him that on cross-examination, and say, when you told this previously, you didn't include the words gave it to you on a silver platter. Are you now saying that he used those words, although you didn't say it before? You would object to that, and you would say that they're not allowed to ask that on cross-examination? Yes, but I think not for the reason your Honor suggests. The government would object because that misstates what Robert said in his post-arrest. He never said that the silver platter statement wasn't said. He offers an explanation. I'm asking you whether you would object on cross-examination, whether you would object to the question asking him whether the version that he gave in his previous examination by an agent that didn't include the word silver platter is correct, rather than the version he gives now in which he says, in which he uses silver platter, which is correct. You would say he's not allowed to ask that, your Honor. We would object on the basis that that misstates his post-arrest statement. He would just read the post-arrest statement, not characterize it, just read it. And if that was the case, then they would need to include the fact that the silver platter statement precedes the statement that explains it. So yes, your Honor, I think that the government would object. That being said, even if the court were to find that Judge Swain should have let this in, which the government submits that it should not have come in because it did not contradict and therefore wasn't proper for impeachment, it was harmless here. How could it be harmless where the government says that the silver platter statement was devastating, I'm quoting correctly, put to lie to Sean Stewart's testimony and showed beyond any reasonable doubt that Sean Stewart is guilty? Correct, your Honor. And I want to make clear that my distinction here is we would not argue that it is harmless error if the court were to find that the silver platter statement was improperly admitted. That is not the government's argument. The government's argument is that it is harmless error if you were to find that the post-arrest statement should have been allowed in because there are subsequent tapes where they played the fact that Robert Stewart said to Richard Kniff that he had never discussed trading with Sean. The jury heard that. They heard that argument in repeated tapes, and there they also heard a subsequent tape saying that he made those statements because he thought Kniff was involved with law enforcement. That's on par with this idea that these statements in the post-arrest were made when being questioned by the FBI. So to be clear, the admission of the silver platter statement, which we believe is proper under both 804b3 and as a co-conspirator statement, and this court can confirm on either basis and properly should confirm on both bases, that we would not argue is harmless error. We, to be clear, argue it's no error at all because it was properly admitted. 806, we think that there is enough in the record that the jury heard Robert Stewart's contention that he did not discuss the trading with Sean Stewart and thus it was harmless. So there was no prejudice? Correct. Now the district court said that the silver platter statement, and I quote, supports the conclusion that Robert knowingly refused insider tips from Sean. Why doesn't that render the statement exculpatory of Robert and thus outside the bounds of the penal interest hearsay exception? Certainly, Your Honor, because the statement needs to be taken in context. The Supreme Court has made that clear in Williamson. This court has made that clear in its subsequent cases, in United States v. Saget, in United States v. Persico, and I think the statement is actually quite on par with the statement in Persico, where in Persico the statement was made, and I believe Ms. Shapiro actually acknowledges in footnote 1 on page 10 of the reply brief, that the Persico statement talks about steps that the co-conspirators took to evade the FBI. Here, that is the context with which the silver platter statement is being made. He didn't trade during that time because he had just received a call from the SEC. To be clear, trading continued subsequent to that statement. So it was along the lines of assuring Kniff of the steps that they were taking, that they were cognizant of the fact that law enforcement was looking at them. He didn't trade at that time, and his statement to Sean was along the lines of, you've got to be crazy to trade at that time. So it is not exculpatory. At the very least, there's definitely a reasonable argument that it's inculpatory, and I think in that situation, Judge Swain's discretion— Or as to its admissibility, you rely as well on its being a co-conspirator statement in furtherance. I'm sorry, Your Honor, I didn't hear the beginning of that. Or as to its admissibility, you rely in addition on its being a co-conspirator statement in furtherance. Yes, Your Honor. Unless the Court has any other questions, we will rest on our submissions. I just have a few quick points. First, with regard to the 806 issue, I just want to emphasize that there are numerous other cases that we've cited in our briefs where the statements are far less directly inconsistent than the ones here. You have Strother, where the impeaching statement is a memo that omits a statement consistent with the testimony. You have Meyerson, where there's two statements that one is not directly inconsistent with the other. You have Peroni, where there's proffer statements where a defendant offers to set up a cocaine deal, which the Court concludes sufficiently bear on credibility to impeach a testimony that he wasn't involved in drug dealing. And you have Rosario, which similarly has recordings involving discussions about heroin trafficking that are then allowed to be impeached to impeach a statement that the defendant was in the gambling business, not the drug business. None of those are nearly as directly contradictory as the statements here. Are you saying those were all cases in which convictions were reversed for failure to? No, those are all cases in which the Court held that statements were properly admitted, or one of them was a reversal. Strother was a reversal. I believe Meyerson the Court held there was error, but it was harmless, and the others were affirmances. But in all cases, there's analysis of whether the statement is admissible under 806, and this Court concluded that it was. With regard to the argument, the government's effort to distinguish its harmless error analysis as between the admission of the statements in the first place and the exclusion of the impeachment material, I submit that that's a distinction without a difference and that it simply should not. Why is it a distinction without a difference? Because, first of all, the factual premise is completely erroneous. Ms. Cuccinella said there were repeated tapes. Those were her words. There's one recording, the April 16th recording, at the end of which on appendix page 681, there's a stray statement at the very end of the conversation where Stewart says, oh no, it's just stuff he mentioned as he goes around. Oh, I'm working on this, I'm working on that. I never told him I've done anything. And then Kniff says, so you never told him you even invested. That's it. So there's no way that in the face of this closing argument, with the repeated efforts to indicate the statement was devastating, and particularly the point that I referred to earlier in the rebuttal, where the government takes to task the defendant for not being able himself to explain the statement and says that he's wrong to say that Robert was lying. In the face of all that, how could the government possibly say that this was harmless when the jury deliberated for five days and had trouble reaching a verdict and clearly was weighing the question of whether to believe the defendant's testimony or not? This could have been tremendously helpful. Certainly not as helpful as calling Robert as a live witness, but the defense could only do so much and it tried every avenue it could possibly explore to get this evidence before the jury. I respectfully submit that the conviction should be vacated and the case remanded for a new trial. For the other arguments, we'll rest on our briefs. Thank you. Thank you. Thank you for your arguments. Court will reserve decision.